UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00134 FDW-DSC

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) |
| | ) ORDER |
| BRADLEY BEAUCHAMP, | ) |
| Defendant. | ) |

THIS MATTER is before the Court upon Defendant Bradley Beauchamp's Motion to Suppress All Evidence from the Traffic Stop by Florida Highway Patrol on March 12, 2016, Intercepted Oral Communications and from the Search of a Cosmetics Case Found in the Trunk of the Vehicle (Doc. No. 1237), the Magistrate Judge's Memorandum and Recommendation ("M&R") recommending this Court DENY Defendant's motion to suppress (Doc. No. 1678), and Defendant's objections to the M&R (Doc. No. 1735). After reviewing the relevant memoranda, recommendation, and objections, the Court hereby OVERRULES Defendant's objections (Doc. No. 1735), ACCEPTS and ADOPTS the Magistrate Judge's M&R (Doc. No. 1678), and DENIES Defendant's motion to suppress (Doc. No. 1237).

## I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(2)-(3); see also 28

1

U.S.C. § 636. The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## II. BACKGROUND

The M&R summarizes the factual background and findings based on the evidence presented relevant to the instant motion:

> Defendant Beauchamp is charged with one count of participating in a racketeering conspiracy in furtherance of the Nine Trey Gangster "Hood" of the United Blood Nation and one count of conspiracy to commit wire fraud based upon an alleged scheme to create fraudulent and cloned credit cards and gift cards. During the initial hearing, the Court heard testimony from Florida Highway Patrol Troopers Nathaniel Cabe and Brian Lundy. At the subsequent hearing, the Court heard testimony from Trooper Cabe.
>
> On March 12, 2016, Trooper Cabe parked his marked vehicle in the median of Interstate Highway 10 in Madison County Florida. Trooper Cabe was assigned to the Criminal Interdiction Unit. At approximately 10:38 am, Cabe observed a white Chrysler 200 travelling east on the highway. Cabe ran the tag and it came back to a rental car owned by Enterprise. Based upon his training and experience, Cabe believed that the car's tinted windows were in violation of Florida law. He was also aware that rental cars do not come equipped with tinted windows. He could not see inside the vehicle as it travelled down the interstate which indicated to him that it was in violation of the law.
>
> Cabe initiated a traffic stop based upon the tinted window violation. His audio and video recording equipment was activated when he turned on his lights to execute the traffic stop. He approached the car from the passenger side and directed the occupants to roll down the windows. He immediately detected a strong odor of

2

marijuana coming from inside the car. Defendant was the driver. Co-Defendant Barrington Lattibeaudiere was the front passenger and co-Defendant Rashaad Sattar was in the back seat. Cabe advised the Defendant that the stop was based upon a violation for tinted windows and that he now smelled marijuana. Defendant stated that Lattibeaudiere had been smoking a cigarette. Cabe stated that it was not cigarette smoke that he smelled but raw marijuana.

Trooper Lundy arrived to assist Cabe. Cabe ordered the occupants out of the car one by one. Trooper Lundy patted down Sattar and placed him in the rear of Cabe's vehicle. Cabe patted down Lattibeaudiere, placed him in handcuffs, and seated him on the ground. Lundy patted down the Defendant and located a baggie containing five grams of suspected marijuana in his left jacket pocket. Lundy also located a gift card in Defendant's right jacket pocket. Defendant was placed in the rear of Cabe's vehicle along with Sattar.

Once the occupants were out of the car and secured, Trooper Lundy measured the window tint on the Chrysler using a department issued Laser Labs model 100 tint meter. The windows measured 26 percent light transmittance as opposed to the 28 percent mandated by Florida law.

Cabe and Lundy then proceeded to search the interior of the Chrysler based upon the strong odor of marijuana. Marijuana residue was visible throughout the passenger compartment. Fourteen gift cards and credit cards were concealed inside the car's owner manual located in the glove compartment. This spiked the troopers' interest in possible credit card fraud offenses. They found 124 gifts cards in a Dre Beats bag in the vehicle. Four fraudulent credit cards were found in a wallet inside the vehicle. The troopers also seized a fraudulent Florida driver's license.

The troopers located a black hard case with combination lock in the trunk. The case was locked. The troopers asked the occupants if they knew anything about the case. Defendant told the troopers that the locked case belonged to a female who was travelling ahead of them in another car. Defendant further stated that the case contained that female's make up. Cabe asked Defendant if he would mind calling her to see if she would consent to a search of the case. Cabe handed him his phone and shut the patrol car door to let him make the call. Defendant never made the call.

Trooper Lundy's canine was shown the case and failed to alert. Trooper Cabe then placed a call to Judge Wesley R. Douglas to request a search warrant for the case. Cabe completed two paragraphs of the search warrant stating the facts to support probable cause and related them to Judge Douglas by phone. He also scanned the completed search warrant and emailed it to Judge Douglas. Judge Douglas swore Cabe over the phone, issued the search warrant, and emailed it to the trooper around 1:14 p.m. The troopers broke open the case and discovered a credit card embossing machine, encoder scanner, computer speaker and a bottle of alcohol.

The three suspects were arrested and the Chrysler was inventoried and towed. The audio and video system continued to record inside Trooper Cabe's vehicle while Defendant and Sattar were confined in the back seat. Incriminating statements by both suspects were recorded.

On December 22, 2015, the Inspector General for the Florida Department of Highway Safety and Motor Vehicles sustained two complaints made against Trooper Cabe. The Inspector General determined that Cabe submitted false documentation regarding his permanent residence and was residing more than thirty miles from his duty station in violation of departmental regulations. As a result, Cabe was suspended for twenty-four hours. On May 5, 2013, Cabe received a written reprimand for engaging in the unauthorized pursuit of a vehicle. On August 1, 2012, he received an oral reprimand for failing to turn in evidence at the end of his shift. Cabe had seized a quantity of drugs during an arrest. While cleaning out his vehicle at his residence, he found one of the suspect pills in the vehicle's trash receptacle. The Court has considered all of these matters as they bear on Trooper Cabe's credibility.

(Doc. No. 1678, pp. 2-5).

Defendant timely filed his Objection to the M&R (Doc. No. 1735) on June 28, 2018. The Court has carefully reviewed the recommendation, objection, and relevant memorandum and finds the issues ripe for *de novo* review.

### III. ANALYSIS

Defendant objects to the M&R, requesting the Court suppress all evidence recovered during or derived from the traffic stop and from the execution of the warrant to search the black case found in the trunk of the vehicle, and to suppress the police car recordings of the Defendant. (Doc. No. 1735, p. 9). In the alternative, Defendant requests the Court conduct a *de novo* hearing to allow Defendant the opportunity to again cross examine Cabe and make further credibility determinations. Id.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment." United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir.2011) (citing Whren v. United States, 517 U.S. 806, 809–10 (1996)). "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." Wilson v. Arkansas, 514 U.S. 927, 931 (1995); see also Whren, 517 U.S. at 810 ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.").

### A. Traffic Stop

Defendant objects to the M&R's conclusion that Defendant's illegally tinted windows gave Cabe an objectively reasonable basis for initiating a traffic stop. Defendant further contends a *de novo* hearing is necessary because the Magistrate Judge limited his opportunity to cross examine Cabe beyond the scope of Cabe's employment misconduct at the second hearing.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. Probable cause exists if, given the totality of the circumstances, the officer "had reasonably trustworthy information... sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir.1998). In assessing the legitimacy of a traffic stop, courts do not attempt to discern an officer's subjective intent for stopping the car. See United States v. Branch, 537 F.3d 328, 340 (4th Cir. 2008); see also Whren, 517 U.S. at 810, 813–19 (traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred, regardless of the officer's subjective motivations.")(citations omitted). Rather, the

analysis concerns whether "the circumstances, viewed objectively, justify th[e] action." Whren, 517 U.S. at 813 (internal quotation marks omitted); United States v. Johnson, 734 F.3d 270, 275 (4th Cir.2013) (traffic stop is legitimate "when officers observe a traffic violation, regardless of their true, subjective motives for stopping the vehicle"). Furthermore, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 235, (1983) (internal quotation marks and citation omitted).

Florida law provides that it is a traffic violation for car windows to be tinted below certain minimum standards. Tinting of driver and front passenger windows must allow at least 28 per cent light transmittance and tinting of rear passenger windows must allow at least 15 per cent. See Fla. Stat. §§ 316.2953-316.2954. Cabe observed that Defendant's car had window tint darker than the minimum requirement and initiated a traffic stop to investigate the violation. As a trained law enforcement officer, Cabe was familiar with the limits on window tint under Florida law and believed the car's tint was too dark. It is well established that, "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle…." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008). As the Fourth Circuit has recognized, an officer's visual observation of illegally tinted windows is alone sufficient to justify a traffic stop. See United States v. Green, 740 F.3d 275, 279 n. 1 (4th Cir. 2014)(windows observed to be "illegally tinted" under Virginia law "justif[ied] the stop"); United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016). Here, it was ultimately determined through the use of a department issued tint meter that Defendant's tinted windows were in violation of Florida law. See United States v. Stewart, 149 F. Supp. 2d 236, 241 (E.D. Va. 2001), aff'd, 42 F. App'x 643 (4th Cir. 2002)

(objective confirmation of officer's visual estimate of a window tint violation established conclusively that the initial traffic stop did not run afoul of the Fourth Amendment).

As the Fourth Circuit has held, "[i]f a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle." United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008). Defendant's incredulity at Cabe's ability to differentiate an illegally tinted window from a legally tinted window is of no moment. Defendant's windows were illegally tinted under Florida law, and Cabe's visual observation of such was sufficient to justify the traffic stop. The Court therefore finds there existed an objectively reasonable basis for Cabe to initiate the traffic stop. Accordingly, a *de novo* hearing is unnecessary and Defendant's request to suppress this evidence fails.

**B. Search of Trunk and Black Case**

Defendant next contends the evidence discovered from the search of the trunk and the black cosmetics case should be suppressed because the search warrant was invalid and the officer's lacked authority to open the trunk.

In regards to the trunk search, Defendant contends the officer's lacked authority to search the trunk because the smell and subsequent discovery of marijuana emanating from the passenger compartment of the vehicle is insufficient evidence to provide probable cause to search the trunk. The Fourth Circuit has held that "the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place.... While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is." United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004); see also, United States v. Champion, 609

7

Fed. App'x 122, 125 (4th Cir. 2015) (finding the strong odor of marijuana "is the most obvious factor supporting a finding of probable cause."). Once officers have probable cause to believe a vehicle contains evidence of a crime, they are authorized to search any area of the car where such evidence might be found. United States v. Ross, 456 U.S. 798, 810-821 (1982).

In addition to the discovery of marijuana residue throughout the vehicle, the officers also found fourteen gift cards and credit cards concealed inside the car's owner manual located in the glove compartment, a fraudulent Florida's driver license, and a "Dre Beats" bag containing 124 gift cards. Such findings are sufficient evidence of criminal activity to give the officers probable cause to continue the search to the trunk of the vehicle in pursuit of further evidence of the discovered criminal activity. Accordingly, the Court finds the officers had lawful authority to search Defendant's trunk.

Regarding the black cosmetics case, Defendant reasserts his argument from his motion that this evidence should be suppressed because the search warrant was defective. However, Defendant fails to address the M&R's conclusion that he lacks standing to challenge the search because he was not the owner of the case. To assert standing to challenge a search or seizure under the Fourth Amendment, the defendant bears the burden of establishing that he has a legitimate expectation of privacy in the area searched. See United States v. Hargrove, 647 F.2d 411, 412 (4th Cir. 1981) ("[T]he [Supreme] Court held that to establish standing for asserting a violation of the [F]ourth [A]mendment, a person must show a legitimate expectation of privacy in the area searched.") (internal citations omitted). Only after the defendant meets this threshold does the Government have to show that the search or seizure at issue was reasonable under the Fourth Amendment. See United States v. Stevenson, 396 F.3d 538, 547 (4th Cir. 2005) (defendant "failed to meet his burden

8

of establishing that he had a reasonable expectation of privacy in his apartment when it was searched" and ending analysis there); see also Hargrove, 647 F.2d at 412 (holding defendant lacked standing to challenge search of stolen car and bag inside car that contained cocaine where he lacked legitimate expectation of privacy in those items). A person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from that property. See Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Clark, 891 F.2d 501, 506 (4th Cir. 1989) (per curiam).

Here, the Defendant lacked standing to challenge the search of the black case because he denied any ownership in the case. This Court, therefore, determines Defendant lacks standing to challenge the search of the black case, and Defendant's request to suppress the contents of the case therefore fails.

### C. Police Car Recordings of Defendant

Defendant argues the police car recordings of Defendant while he was in Cabe's police car should be suppressed due to violations of Title III of the Electronic Communication Privacy Act (ECPA), Title 18 U.S.C. § 2511, and the Fourth Amendment.

The ECPA generally prohibits the unauthorized interception of "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). However, the ECPA specifically excludes from its definition of "oral communication" any oral communications "by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). "The legislative history of [this statutory provision] shows that Congress intended this definition to parallel the 'reasonable expectation of privacy test' articulated by the Supreme Court in Katz." United States v. Turner, 209 F.3d 1198, 1200 (10th

9

Cir.2000) (citation omitted). Accordingly, if Defendant had no expectation of privacy in the back seat of a police car, the ECPA does not apply to any of his recorded statements.

Both federal and state courts have concluded that a person has no objectively reasonable expectation of privacy while seated in a patrol car. See, e.g., United States v. Paxton, 848 F.3d 803, 808-09 (7th Cir. 2017); United States v. Dunbar, 553 F.3d 48, 57 (1st Cir. 2009); United States v. Turner, 209 F.3d 1198, 1200–01 (10th Cir. 2000); United States v. Clark, 22 F.3d 799, 801–02 (8th Cir. 1994); United States v. McKinnon, 985 F.2d 525, 527–28 (11th Cir. 1993); United States v. Carter, 117 F.3d 1418 (5th Cir. 1997); United States v. Sallee, No. 91 CR 20006–19, 1991 WL 352613, at *2 (N.D. Ill. Oct. 24, 1991) (collecting state cases); State v. Torgrimson, 637 N.W.2d 345, 350 (Minn. Ct. App. 2002); State v. Ramirez, 535 N.W.2d 847, 850 (S.D. 1995)(collecting cases); State v. Smith, 641 So.2d 849, 852 (Fla. 1994).

It is immaterial whether the individual has been arrested, temporarily detained, or simply invited to sit in the car while police conduct an investigation. See, e.g., Turner, 209 F.3d at 1201("whether an individual is in custody does not materially affect an expectation of privacy in a police car"). The Fourth Circuit adopted this holding in United States v. Fridie, 442 Fed. App'x 839, 841 (4th Cir. 2011), finding that defendant did not have a reasonable expectation of privacy in a conversation he had while seated in an officer's patrol car.

Defendant fails to cite any precedent binding on this Court to demonstrate that Defendant had a reasonable expectation of privacy in Cabe's patrol car. As such, the Court determines Defendant lacked any reasonable expectation of privacy and finds that his recorded statements are not an unauthorized interception under the ECPA or the Fourth Amendment. See Paxton, 848 F.3d at 813 (ECPA did not apply to statements by defendants in police car).

### D. Officer's "Pat Down" of Defendant

Lastly, Defendant contends Officer Lundy's "pat down" and seizure of marijuana and gift cards from Defendant were conducted unlawfully. He argues that the pat down could not have identified a plastic bag of marijuana and ordinary gift cards as contraband under the plain feel exception to the warrant requirement.

Police officers may seize contraband detected during the lawful execution of a Terry search. Minnesota v. Dickerson, 508 U.S. 366, 374 (1993). Courts have held that, under the plain feel doctrine, officers did not have to be "certain that the object … was contraband" to seize it. United States v. Yamba, 506 F.3d 251 (3d Cir. 2007). Instead, the officer's experience must merely lead him to "reasonably suspect" that he has felt contraband. Id.

While performing the pat down, Lundy felt what he believed to be a plastic bag containing marijuana. Given Lundy's experience with regards to searching for and seizing marijuana, the Court is satisfied that Lundy reasonably suspected he felt contraband. The Court, therefore, determines Lundy's pat down and seizure of the contraband was lawful.

### IV. CONCLUSION

A full review of the M&R and other documents of record convinces the Court that the recommendation of the magistrate judge is, in all respects, in accordance with the law and should be approved. Accordingly, the Court OVERULES Defendant's objections (Doc. No. 1735), ACCEPTS and ADOPTS the Magistrate Judge's M&R (Doc. No. 1678), and DENIES Defendant's motion to suppress (Doc. No. 1237).

IT IS THEREFORE ORDERED for the forgoing reasons Defendant's Motion to Suppress All Evidence from the Traffic Stop by Florida Highway Patrol on March 12, 2016, Intercepted

Oral Communications and from the Search of a Cosmetics Case Found in the Trunk of the Vehicle (Doc. No. 1237) is DENIED.

IT IS SO ORDERED.

Signed: July 27, 2018

Frank D. Whitney
Chief United States District Judge